IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Walker D. Miller

Civil Action No.   05-cv-01126-WDM-BNB

FREE SPEECH COALITION, et al.,

        Plaintiffs,

v.

ALBERTO GONZALES, in his official capacity as Attorney General of the United
States,

        Defendant.
_____

## ORDER ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
_____

Miller, J.

        This matter is before me on Defendant Alberto Gonzales's (the Attorney

General) amended motion to dismiss, or in the alternative motion for summary

judgment, filed December 12, 2005.  I have reviewed the parties' written arguments and

summary judgment evidence and find that oral argument is not required.  For the

reasons that follow, the motion will be granted in part.

Background

        Plaintiffs Free Speech Coalition, Inc.,[1] Free Speech Coalition of Colorado, David

Conners, and Lenjo, Inc., d/b/a/ New Beginnings, Inc. (altogether "Plaintiffs") are all

involved, in various capacities, in the adult entertainment industry.  In this action, they

_____

[1] Free Speech Coalition is a California trade association which represents more
than six hundred businesses and individuals involved in the production, distribution,
sale, and presentation of non-obscene, adult-oriented materials.  Its mission is to
protect the First Amendment rights of its members.  (Complaint, Docket No. 42, ¶ 9)

seek declarations that 18 U.S.C.A. § 2257 and associated regulations violate their First

Amendment and privacy rights, and a permanent injunction prohibiting the enforcement

of these laws.

"Concerned about the exploitation of children by pornographers, Congress

enacted the Child Protection and Obscenity Enforcement Act of 1988 . . . to require

producers of sexually explicit matter to maintain certain records concerning the

performers that might help law enforcement agencies monitor the industry." *Sundance*

*Assoc., Inc. v. Reno* (*Sundance*), 139 F.3d 804, 805 (10th Cir. 1998).  The relevant

provisions of the Act were codified in part at 18 U.S.C.A. § 2257, and established

criminal and civil liability for failures to create or maintain certain records by persons

"produc[ing]" matters containing "actual sexually explicit conduct."  In particular, §

2257(b) required such "producers" to ascertain a performer's name and date of birth

through "examination of an identification document . . . and any other indicia of . . .

identity as may be prescribed by regulations," as well as any other name used by that

performer and to record that information in the records required by

§ 2257(a).  However, the statutory definition of "produces" excluded persons involved in

"mere distribution or any other activity which does not involve hiring, contracting for

managing, or otherwise arranging for the participation of the performers depicted." §

2257(h)(3) (2004).[2]

In 2003, Congress amended § 2257 by passing the Prosecutorial Remedies and

---

[2] As discussed below, this provision has since been significantly altered by an amendment in 2006.

Other Tools to End the Exploitation of Children Today (PROTECT) Act, which stiffened

the applicable penalties and expanded the definition of the term "produces" to include

creation of a "computer generated image, digital image, or picture." Pub. L. No. 108-

21, § 511, 18 U.S.C.A. § 2257(h)(3), (i) (2004).

§ 2257 also requires the Attorney General to "issue appropriate regulations to

carry out this section." § 2257(g) (2007). The Attorney General first promulgated

regulations on April 24, 1992, requiring, among other things,

> producers to retain copies of the performers' identification documents, to
> cross-index the records by all name(s) of each performer, including any
> alias, maiden name, nickname, stage name or professional name of the
> performer; and according to the title, number, or other similar identifier of
> each book, magazine, periodical, film, videotape, or other matter, and to
> maintain the records for a specified period of time.

Inspection of Records Relating to Depiction of Sexually Explicit Performances, 70 Fed.

Reg. 29607, 29608 (May 24, 2005) (internal quotations omitted). Additionally, the

regulations defined two types of "producer:" (1) the "primary producer," who "actually

films, videotapes, or photographs a visual depiction of actual sexually explicit conduct;"

and (2) the "secondary producer," who "produces, assembles, manufactures, publishes,

duplicates, reproduces, or reissues a book, magazine, periodical, film, videotape, or

other matter intended for commercial distribution that contains a visual depiction of

actual sexually explicit conduct." *Sundance*, 139 F.3d at 806 (*quoting* 28 C.F.R. §

75.2(a)). In 1998, the Tenth Circuit held that the regulations were invalid as *ultra vires*

to the extent they regulated those whose activity "does not involve hiring, contracting

for managing, or otherwise arranging for the participation of the performers depicted."

3

*Id.* (*quoting* § 2257(h)(3) (1998)).

Effective on June 23, 2005, the Attorney General amended the regulations "to account for changes in technology, particularly the internet, and to implement the [PROTECT] Act."  Inspection of Records Relating to Depiction of Sexually Explicit Performances, 70 Fed. Reg. at 29608.  The updated regulations left in place those portions declared invalid by the *Sundance* court.

The amended regulations, *inter alia*, (1) expanded the "secondary producer" definition to include any person "who inserts on a computer site or service a digital image of, or otherwise manages the sexually explicit content of a computer site or service that contains a visual depiction of an actual human being engaged in actual sexually explicit conduct, including any person who enters into a contract, agreement, or conspiracy to do any of the foregoing;" (2) expanded the record-keeping obligations of producers by requiring them to keep (a) a copy of all visual depictions produced; and (b) "[w]here the depiction is published on an internet computer site or service, a copy of any [uniform resource locator (URL)][3] associated with the depiction or, if no URL is associated with the depiction, another uniquely identifying reference associated with the location of the depiction on the internet;" (3) continued various record maintenance and cross-referencing requirements; (4) required that the street address at which the records are kept be included in the compliance statement, required to be displayed on media containing the depictions; (5) required that producers keep a copy of a

---

[3] *See Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 407 n.4 (2d Cir. 2004) (explaining that URLs are "[s]equences of letters that identify resources in the web, such as documents, images, downloadable files, services, and electronic mailboxes").

performer's identification card for depictions made after July 3, 1995; and (6) required that producers make their records available for inspections, including by making their records available for at least twenty hours per week.  28 C.F.R. § 75.1-75.8.

Plaintiffs argue that the statute and regulations are invalid as violative of their First Amendment and privacy rights, and in any case, the regulations, to the extent they apply to secondary producers, contravene the Tenth Circuit's holding in *Sundance*.  In December 2005, following a hearing on the matter, I issued a preliminary injunction that generally prohibited enforcement of the regulations to the extent they are inconsistent with *Sundance*, and prohibited enforcement of two provisions in the regulations that likely violated the First Amendment.  *Free Speech Coal. v. Gonzales*, 406 F. Supp. 2d 1196, 1212-13 (D. Colo. 2005).

<u>The Nature of the Attorney General's Motion</u>

The Attorney General presents a combined motion to dismiss and for summary judgment.  In their response, however, Plaintiffs occasionally indicate that they view this motion as merely a motion to dismiss, and imply that they should have the opportunity for more discovery.  Plaintiffs did not, however, specifically move under Fed. R. Civ. P. 56(f) for an opportunity for more discovery, they never attempted to supplement their brief while this motion was pending, and they did not oppose a motion to stay discovery that was granted on May 22, 2006 (*see* Unopposed Motion to Stay, Docket No. 100; Order, Docket No. 102).  Therefore, I conclude that Plaintiffs are not entitled to any more discovery, and I treat this motion as a motion for summary judgment.

Standard of Review

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying 'a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.'" *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)).  Then, "[t]o avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case."  *Id.*

Discussion

1.    Plaintiffs' *Ultra Vires* Claim (Claim 8)

I begin with the issue whether the regulations continue to be *ultra vires* under *Sundance*.  In my preliminary injunction order, I concluded that I was bound by *Sundance* as urged by Plaintiffs.  *Free Speech Coal.*, 406 F. Supp. 2d at 1203-04. Since that time, however, Congress has amended § 2257.  Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, § 502, 18 U.S.C.A. § 2257 (2007).  Although neither party informed the court of these critical changes, the 2006 amendments appear to essentially restate the Attorney General's regulations — thus

6

rendering Plaintiffs' *ultra vires* claim moot.  However, since neither party has briefed the effects of the new amendments, I will not grant summary judgment at this time, but rather will order Plaintiffs to show cause, on or before April 16, 2007, why summary judgment should not be granted on this claim.  The Attorney General may respond by April 30, 2007.

2.      Plaintiffs' General First Amendment Claims (Claims 1-7, 17-18, & 25-28)

Plaintiffs bring a multitude of claims alleging that § 2257 and the regulations associated with it violate their First Amendment rights.  In support, Plaintiffs argue that these laws function as a prior restraint, are content-based, and should thus be reviewed under strict scrutiny.  After considering the parties' arguments, however, I continue to find, for substantially the reasons given in my prior order, that there is no prior restraint, the statute and regulations are content-neutral, and intermediate scrutiny applies.  *See Free Speech Coal.*, 406 F. Supp. 2d at 1204-06.

Moreover, in applying intermediate scrutiny to the facts of this case, I note that little has changed since my prior ruling, as Plaintiffs have not produced any additional evidence in response to the Attorney General's summary judgment motion.  After considering the parties' arguments, and giving due regard to the changes in the standard of review, I continue to find, for substantially the reasons given in my prior order, that the statute and regulations satisfy intermediate scrutiny, with the two exceptions noted in that order.[4]  In addition, I note that under the *Alameda Books*

---

[4] The Attorney General's motion does not specifically ask for summary judgment regarding the two aspects of the regulations that I found unduly burdensome in my prior order, and he does not argue that I should change these findings.  Therefore, the

burden shifting regime, there is no genuine issue of fact, since the Attorney General's evidence, at a minimum, "fairly supports" its rationale for the statute and regulations, and Plaintiffs have failed to "cast direct doubt" on this rationale.  *See Doctor John's, Inc., v. City of Roy*, 465 F.3d 1150, 1165 (10th Cir. 2006) (describing the regime established by *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425 (2002)).

3.    Plaintiffs' Vagueness and Overbreadth Claims (Claims 11-16, 20-22, & 24)

Plaintiffs argue that a number of provisions in the statute and regulations are, on their face, impermissibly vague, overbroad, or both.  But "[f]acial challenges are strong medicine," and thus I "must be vigilant in applying a most exacting analysis to such claims."  *Ward v. Utah*, 398 F.3d 1239, 1246-47 (10th Cir.2005).  Though perhaps "efficient in the abstract," facial challenges risk "losing the lessons taught by the particular." *Sabri v. United States*, 541 U.S. 600, 609 (2004). Thus, the standard Plaintiffs must meet is very high, at least in a pre-enforcement context as in this case; Plaintiffs must show that the statute and regulations are "impermissibly vague in all of [their] applications."  *Ward*, 398 F.3d at 1251.[5]  Finally, "[w]hen the validity of an act of

_____

Attorney General has failed to demonstrate entitlement to relief, and summary judgment will be denied as to these aspects of Plaintiffs' claims.

    [5] This standard derives from *United States v. Salerno*, 481 U.S. 739, 745 (1987) ("A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid."). However, in *City of Chicago v. Morales*, 527 U.S. 41, 55 n.22 (1999), in an opinion joined by two other justices, Justice Stevens indicated that the proper standard is whether "vagueness permeates the [law]."  Due to this disagreement, and since the distinction did not affect the outcome of that case, the Tenth Circuit recently applied the latter standard in *Doctor John's*, 465 F.3d at 1157 & n.5.  Similarly, this controversy is immaterial in this case, since my conclusions on each of Plaintiffs' vagueness and overbreadth claims would be the same under either

the Congress is drawn in question, and even if a serious doubt of constitutionality is raised, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is *fairly possible* by which the question may be avoided." *Crowell v. Benson*, 285 U.S. 22, 62 (1932) (emphasis added).[6]

    a.   <u>Claim 11</u>

    28 C.F.R. § 75.1(b) allows producers to use a foreign-government issued equivalent to a United States Picture Identification Card "when both the person who is the subject of the picture identification card and the producer maintaining the required records are located outside the United States."  Plaintiffs argue that it is not clear whether producers and performers must be permanently outside the U.S. to take advantage of this exception, or whether they can do so if they are only temporarily outside the country.  In response, the Attorney General argues that the absence of any temporal modifier means that there is no temporal qualifier, and that producers can therefore take advantage of the exception even if they are only temporarily outside the United States.  I find the Attorney General's construction at least fairly possible, and will therefore adopt it.  *See Crowell*, 285 U.S. at 62.  Also, this regulation is surely not vague in many cases where the readily available picture identification materials were produced in the United States.  *See Ward*, 398 F.3d at 1251.  Therefore, summary judgment is appropriate on this claim.

---

standard.

    [6] Conversely, of course, the court will not adopt interpretations that are not fairly possible.  *Planned Parenthood of the Rocky Mountain Servs. Corp. v. Owens*, 287 F.3d 910, 926 (10th Cir. 2002).

b.   <u>Claim 12</u>

Plaintiffs next argue that the regulations' requirement that producers examine and usually retain a copy of a picture identification card is substantially overbroad in relation to the regulations' plainly legitimate sweep.  I disagree, and find that for substantially the same reasons the regulation survives intermediate scrutiny, it also survives overbreadth analysis.

c.   <u>Claim 13</u>

18 U.S.C.A. § 2256 defines "sexually explicit conduct" to include, among other things, "sadistic or masochistic abuse," but does not define these terms.  In their thirteenth claim, Plaintiffs argue that this phrase is vague because it is not clear at what point "respectful sadism or healthy masochism become[s] abusive."  (Pls.' Resp. Br., Docket No. 78, at 15).  I disagree, and find as other courts have that this language is materially indistinguishable from the language upheld by the United States Supreme Court in *New York v. Ferber*, 458 U.S. 747 (1982).  *See United States v. X-Citement Video, Inc.*, 982 F.2d 1285, 1288 (9th Cir. 1992), *rev'd on other grounds* 513 U.S. 64 (1994); *United States v. Lamb*, 945 F. Supp. 441, 450 (N.D.N.Y. 1996).  Summary judgment will therefore be granted on this claim.

d.   <u>Claim 14</u>

Plaintiffs' fourteenth claim alleges that 28 C.F.R. § 75.2(a) requires producers to keep records "for any performer portrayed in a visual depiction of actual sexually explicit conduct after June 23, 2005."  (Complaint, Docket No. 42, ¶ 171)  According to Plaintiffs, this regulation is vague because it is not clear whether they must keep

records for depictions that were made before June 23, 2005, but reproduced or published later.

However, Plaintiffs misstate what the regulation actually says — a fact that the Attorney General fails to note.  The actual regulation requires that producers must keep copies relating to any depiction "*made* after *July 3, 1995*,"  28 C.F.R. § 75.2(a) (emphasis added).  The language then specifically ties the June 23, 2005 date to "such a depiction," i.e., "made after July 3, 1995."  Whatever the cause of this mistake, I find the language has plain meaning and is not vague.

      e.   <u>Claim 15</u>

Plaintiffs also argue that C.F.R. § 75.2(a)(1)(ii) is impermissibly vague to extent it requires "a copy of any URL associated with [a] depiction."  According to Plaintiffs, this language "can be interpreted equally to mean: 1) a copy of purely the textual information contained in the URL; 2) an electronic copy of the URL that includes the graphic data which it references; or 3) a copy of the electronic URL-designated link to the regulated image where it is stored."  (Pls.' Resp. Br., Docket No. 78, at 116-17)  In response, the Attorney General argues that the language should be construed to mean the textual information that designates where the depiction can be found (i.e., the first of Plaintiffs' three options).  I agree that this construction is fairly possible, *see Crowell*, 285 U.S. at 62, and note that Plaintiffs have essentially conceded as much.  Further, while I have previously indicated that there may be First Amendment problems with this aspect of the regulations, *see Free Speech Coal.*, 406 F. Supp. 2d at 1209, these difficulties are not due to the vagueness of the regulation.  Therefore, summary

judgment is appropriate on this claim.

      f.    <u>Claim 16</u>

Immediately after defining a "copy" of an identification document or a picture card to include photocopies and scanned reproductions, the regulations define copies of sexually explicit depictions as "the sexually explicit image itself (e.g., a film, an image posted on a web page, an image taken by a webcam, a photo in a magazine, etc.)." 28 C.F.R. § 75.2(e). Plaintiffs argue that this definition is impermissibly vague. For example, if a producer records a movie on film and the sells it in DVD format and also distributes it in digital format over the internet, which of these formats qualifies as a copy? Only the original film? One of the DVD's? A paper printout of the internet depiction?

While I agree that this requirement is vague, I find that it is not impermissibly vague. It is important to note that the vagueness of this regulation will at most require Plaintiffs to keep more expensive types of copies, and Plaintiffs have not produced any evidence that this will have a significant chilling effect on their speech. Therefore, since this regulation does not implicate a substantial amount of constitutionally protected conduct, and since it comes in a pre-enforcement context, I will apply the reasoning of *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489 (1982),[7] and uphold Plaintiffs' challenge only if the regulation is "impermissibly vague in

---

[7] In *Jordan v. Pugh*, 425 F.3d 820, 828 (10th Cir. 2005), the Tenth Circuit explained that:

    [w]hen considering 'a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment

all of its applications," *id.* at 497.

In addition, the Attorney General argues that "copy" does not mean original. Although this narrowing construction is not mandated by the regulation's text or its context, I find that it can be accepted as a "fairly possible" construction.  *See Crowell*, 285 U.S. at 62.  And, given this interpretation, it would be reasonably clear that a producer of a film that is regularly sold in DVD format, may comply with the regulations by keeping one of these DVD's in his files.  Therefore, under *Hoffman Estates*, summary judgment is appropriate on this claim.

g.    Claim 20

_____

reaches a substantial amount of constitutionally protected conduct.'
*Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 494, 102
S.Ct. 1186, 71 L.Ed.2d 362 (1982).  Under either theory, a facial
challenge is available only if the answer is yes."

It is not clear what the *Jordan* court meant by this last statement.  One possibility is that facial challenges that do not reach a substantial amount of constitutionally protected conduct will be converted to "as applied" claims.  *See United States v. Mazurie*, 419 U.S. 544, 550 (1975) ("It is well established that vagueness challenges to statues which do not involve First Amendment freedoms must be examined in the light of the facts fo the case at hand.").  In a pre-enforcement context, it would seem that this would mean that Plaintiffs often would not have standing to bring such a claim because they were not currently suffering from a substantial injury.  *See Savina v. Sec'y of Labor*, 594 F.2d 1358, 1367 (10th Cir. 1979) (holding that plaintiff did not have standing to mount a facial challenge to an OSHA regulation because it had not been charged with violating that particular regulation).  However, another possibility is that the *Jordan* court merely meant that the claim would be evaluated under an government-friendly test as in *Hoffman Estates*.  *See* 455 U.S. at 498 (describing sliding scale where the Court is more tolerant of a law that does not implicate a substantial amount of constitutionally protected conduct); *id.* at 497 (emphasizing that plaintiffs must demonstrate that the law is impermissibly vague in all of its applications); *id.* at 502 (upholding the challenged ordinance merely because at least some of the items sold by the plaintiffs were clearly covered by the law at issue).  Since *Hoffman Estates*, like this case, involved a pre-enforcement facial challenge, I find that I am bound to follow its reasoning.

13

28 C.F.R. § 75.6(b)(2) requires producers to affix to copies of sexually explicit depictions "[t]he date of production, manufacture, publication, duplication, reproduction, or reissuance of the matter."  Plaintiffs complain that it is not clear which of these many dates should be used.  The Attorney General responds that the use of the disjunctive "or" means any of the dates can be used.  I find the Attorney General's construction at least fairly possible, *see Crowell*, 285 U.S. at 62, and that it resolves any ambiguities in the regulation.  Ssummary judgment is therefore appropriate on this claim.

    h.    Claim 21

28 C.F.R. § 75.8(d) provides that a statement required by the statute and regulations concerning the location of records shall be located "on [a website's] homepage, any known major entry points, or principal URL (including the principal URL of a subdomain), or in a separate window that opens upon the viewer's clicking a hypertext link that states, '18 U.S.C. 2257 Record-Keeping Requirements Compliance Statement.'"  Plaintiffs argue that this language is impermissibly vague because the terms "homepage," "known major entry points," "principal URL," and "principal URL of a subdomain" are not defined.  I disagree.  Again, the regulation is written in the disjunctive, meaning that under the regulation, the required label can be placed in any of these locations, and the term "homepage" is well-known among computer-users.[8]

    i.    Claim 22

28 C.F.R. § 75.8(c) provides that, for films or videos which contain end credits, a

---

[8] I note, however, that under the 2006 amendments to § 2257(e)(1), the required label must be affixed to every page of a website that contains a regulated depiction.

14

statement required by the statute and regulations concerning the location of records

"shall be presented at the end of the end titles or final credits and shall be displayed for

a sufficient duration to be capable of being read by the average viewer."  Plaintiffs

complain this is vague with regards to compilation videos.  Summary judgment is

appropriate here, however, because Plaintiffs do not even claim that this language is

vague in all of its applications, but rather that it is vague in only some.  *See Ward*, 398

F.3d at 1251.

       j.    Claim 24

     18 U.S.C. § 2257(h)(3) defines performer as "includ[ing] any person portrayed in

a visual depiction engaging in, or assisting another person to engage in, sexually

explicit conduct."  Plaintiffs claim it is not clear what assisting means.  I disagree.

Assist is a commonly understood term, *see Grayned v. City of Rockford*, 408 U.S. 104,

110 (1972) ("Condemned to the use of words, we can never expect mathematical

certainty in our language."), and Plaintiffs cannot show this regulation is invalid in all of

its applications, *see Ward*, 398 F.3d at 1251.  Summary judgment is therefore

appropriate on this claim as well.

4.    Plaintiffs' Ex Post Facto Claim (Claim 9)

     The regulations require producers, for any depictions made after July 3, 1995, to

obtain the performers names and birthdays from examining a picture identification card.

28 C.F.R. § 75.2(a)(1).  "Picture identification card" is specifically defined in § 75.1(b).

Plaintiffs complain that prior to the new regulations, they were allowed to obtain this

information from inspecting other types of documents, and argue that requiring them to

15

now go back and find picture identification cards for all of these performers is unfair and impermissible under the Ex Post Facto Clause.  In response, the Attorney General argues that he does not intend to enforce this regulation in this way, and that producers will be fine as long as the documents they inspected were allowed by the regulations at the time.  Such an interpretation, however, is not fairly possible from the text of the regulation.  *See Planned Parenthood*, 287 F.3d at 926 ("We are only to consider interpretations of statutes that are 'fairly possible'").  Indeed, the plain text of the regulation fully supports Plaintiffs' interpretation.  Therefore, the Attorney General is not entitled to summary judgment on this issue.

5.    Plaintiffs' Claims Regarding Separate Copies for Each Reproduction (Claims 17 & 18)

In Plaintiffs' seventeenth and eighteenth claims, they argue that the regulations cannot not survive strict scrutiny (Claim 17) and intermediate scrutiny (Claim 18) because they require a separate copy each time a depiction is reproduced (for each iteration of the depiction).  In response, the Attorney General argues that Plaintiffs have mischaracterized the regulations, and that separate copies are not required.  I agree with the Attorney General.  The regulations require in essential parts that any producer of any matter depicting certain sexual conduct made after July 3, 1995, shall maintain records containing a copy of the depiction.  28 C.F.R. § 75.2(a).  Under the plain language of the regulation, a producer is not required to keep separate copies each time the depiction is reproduced.  At a minimum, the Attorney General's construction is at least fairly possible, *see Crowell*, 285 U.S. at 62, and summary judgment is therefore

16

appropriate for the same reasons given above regarding Plaintiffs' general First Amendment claims.

6.  Self-Incrimination (Claim 23)

Plaintiffs also claim that the regulations violate their Fifth Amendment right against self-incrimination.  The regulations, however, merely require the Plaintiffs to keep records that may be inspected.  Moreover, as I indicated in my prior order, Plaintiffs have not produced any evidence that they have ever been subjected to an inspection.  *See Free Speech Coal.*, 406 F. Supp. 2d at 1207 n.9.  (*See also* Report to Congress, April 30, 2004, Ex. 1 to Docket No. 22, at 2)  As a result, the Attorney General argues that Plaintiffs have not demonstrated any concrete injury sufficient to give them standing on this claim.

The parties focus their arguments on *Chavez v. Martinez*, 538 U.S. 760, 766, 777 (2003), where the Supreme Court held that improper questioning alone does not constitute a completed violation of the right against self-incrimination sufficient to sustain a § 1983 claim.  Justice Thomas opined that "a violation of the constitutional *right* against self-incrimination occurs only if one has been compelled to be a witness against himself in a criminal case."  *Id.* at 770 (emphasis in original)  This opinion was joined by just three other justices, but Justice Souter (joined by Justice Breyer) also concurred in the Court's holding, and merely wrote separately to express his opinion that prophylactic extensions of the core guarantee (exclusion of evidence at trial) may be warranted when the judicial capacity to protect it is at risk.  *Id.* at 777-78.

In this case, Plaintiffs have made no attempt to explain how the judicial capacity

17

to protect their rights is threatened.  And, while it is not clear whether Chavez was a

standing decision, *compare Mayle v. Felix*, 125 S.Ct. 2562, 2573 (2005) (implying it

was a ripeness decision) *with McKinley v. City of Mansfield*, 404 F.3d 418, 438 (6th Cir.

2005) (holding that it was essentially a standing decision), I need not determine the

most appropriate label.  It is sufficient that these cases, taken together, convince me

that Plaintiffs' twenty-third claim should be dismissed.

7.    Privacy Claims (Claims 29 & 30)

        Plaintiffs' also argue that the statute and regulations violate the privacy rights of

(1) performers by requiring that primary producers provide secondary producers with a

copy of the performer's identification card, which may contain private information such

as a residential address (Claim 29); and (2) producers who work out of their homes by

mandating disclosure of the actual place of business on a label.  In response, the

Attorney General has suggested that primary producers may redact the month and day

of birth, address, and social security number.  In my prior order, I indicated that this

construction is fairly possible, *see Crowell*, 285 U.S. at 62, and found that Plaintiffs'

were unlikely to succeed on their privacy claims.  *See Free Speech Coal.*, 406 F. Supp.

2d at 1210-11.  Similarly, I now find for substantially the reasons given in my prior

order, that the scant evidence Plaintiffs have produced is insufficient for any

reasonable factfinder to find a reasonable probability of harm from the required

disclosures.  Therefore, summary judgment is appropriate on these claims.

8.    Claims Plaintiffs do not Defend (Claims 10, 19, 31 & 32)

        Plaintiffs have failed to respond to the Attorney General's arguments that he is

entitled to summary judgment on Plaintiffs tenth, nineteenth, thirty-first, and thirty-second claims.   Nonetheless, summary judgment is only appropriate if the Attorney General has met his burden of production under Fed. R. Civ. P. 56(c).   *Neal v. Lewis*, 414 F.3d 1244, 1248 (10th Cir. 2005).   After reviewing the Attorney General's arguments and supporting evidence regarding these claims, I find that he has done so.[9] Therefore, summary judgment will be granted as to these claims.

Accordingly, it is ordered:

1.      Defendant's amended motion to dismiss, or in the alternative motion for summary judgment, filed December 12, 2005 (Docket No. 59), is granted in part and denied in part.

2.      All of Plaintiffs' claims are dismissed, with the following exceptions:

a.      Plaintiffs' general First Amendment claims to the extent they allege that 28 C.F.R. § 75.2(a)(1)(i) is unduly burdensome as to internet chat rooms;

b.      Plaintiffs' general First Amendment claims to the extent they allege that 28 C.F.R. § 75.2(a)(1)(ii) is unduly burdensome with regards to websites not under the control of the record-keeper; and

c.      Plaintiffs' Ninth Claim alleging a violation of the Ex Post Facto Clause of the Constitution.

d.      Plaintiffs' Eighth Claim alleging that the regulations are *ultra vires*.

3.      Plaintiffs shall show cause, on or before April 16, 2007 why, in light of the 2006

---

[9] I also note that the 2006 amendments to § 2257 appear to have mooted Plaintiffs' tenth claim.

amendments to 18 U.S.C.A. 2257, summary judgment should not be granted on

their Eighth Claim.  The Attorney General may respond on or before April 30,

2007.

DATED at Denver, Colorado, on March 30, 2007.

BY THE COURT:


s/ Walker D. Miller
United States District Judge